1  JODI LINKER
   Federal Public Defender
2  Northern District of California
   NED SMOCK
3  Assistant Federal Public Defender
   19th Floor Federal Building - Box 36106
4  450 Golden Gate Avenue
   San Francisco, CA 94102
5  Telephone:   (415) 436-7700
   Facsimile:   (415) 436-7706
6  Email:       Ned_Smock@fd.org

7

8  Counsel for BAIRON MARADIAGA ARCHAGA

9

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,          **Case No.:** CR 25-CR-00346 RS

15            Plaintiff,               **DEFENDANT'S SENTENCING
                                       MEMORANDUM**
16        v.
                                       Date:   November 4, 2025
17  BAIRON MARADIAGA ARCHAGA,          Time:  9:30 a.m.
                                       Court: Hon. Richard Seeborg
18            Defendant.

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Bairon Maradiaga Archaga is scheduled to appear before the Court on November 4, 2025, for a jointly requested combined change of plea and sentencing hearing. Mr. Maradiaga intends to plead guilty to an information charging one count of possession for sale of fentanyl.  He respectfully requests that the Court impose the parties' agreed-upon sentence of time served and one business day to be followed by three years of supervised release and a stay-away order from the Tenderloin. In light of the proposed disposition, he requests that the Court decline to order preparation of a Presentence Report, pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii).

Mr. Maradiaga is a 28-year-old man from Honduras with no prior criminal convictions who came to this country to find a better life and to send money back home to his mother and his daughter. He has worked here in landscaping, painting, and construction, but has struggled to find enough work to cover his rent and save enough money to send back home.  On October 15, 2025, Mr. Maradiaga was arrested after he was seen assisting in a hand-to-hand narcotics transaction with his co-defendant.  He was not a sophisticated drug dealer by any means.  This case involves just over 2.2 grams of fentanyl.  Mr. Maradiaga did not have any drugs on his person when he was arrested, nor did he have any weapons.  In total, he possessed $68 in cash.  As part of this fast track disposition, Mr. Maradiaga waived the right to proceed by indictment, waived the right to seek release while the case was pending, and he immediately took responsibility for his conduct by agreeing to plead guilty at the earliest possible opportunity. Mr. Maradiaga will face substantial immigration consequences as a result of this conviction. He will not only be subject to near-certain deportation back to Honduras, but he will be ineligible for numerous avenues of relief in immigration proceedings and will become permanently inadmissible to the United States in the future.

**DISCUSSION**

**I.     Advisory Guidelines Calculation**

Mr. Maradiaga agrees with the government that the adjusted offense level is 8, as set forth in the parties' plea agreement. The advisory guidelines are calculated this way:

a.     Base Offense Level, U.S.S.G. § 2D1.1(a)(5), (c)(8):                    12

DEFENDANT'S SENTENCING MEMORANDUM

2

b.      Acceptance of Responsibility:                                          -2

c.      Zero-Point Offender Adjustment: U.S.S.G. § 4C1.1:                      -2

d.      Adjusted Offense Level:                                                 8

The parties also agree that Mr. Maradiaga's criminal history category is I.  United States Pretrial Services determined that Mr. Maradiaga has no countable convictions.  His advisory guideline sentencing range is therefore 0-6 months.

## II.    A Sentence of Time Served Would Be Sufficient but Not Greater Than Necessary To Achieve the Sentencing Goals Of § 3553(a)

In sentencing Mr. Maradiaga, this Court must consider all of the directives set forth in 18 U.S.C. § 3553(a); the Guidelines are only one factor among many to be considered by the Court. *See United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). "The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). Those goals include the need to: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; (5) protect the public from further crimes of the defendant; and (6) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). Section 3553(a) also directs the Court to consider a number of additional factors, including: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, § 3553(a)(1); the kinds of sentences available, § 3553(a)(3); the sentencing guideline range, § 3553(a)(4); pertinent Sentencing Commission policy statements, § 3553(a)(5); the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and the need to provide restitution to any victims of the offense, § 3553(a)(7).

Under *Booker*, the sentencing court must impose the lowest reasonable sentence that fulfills the goals of Congress, unencumbered by offense levels, criminal history, or the availability of authorized downward departures. While the Court may apply a presumption of reasonableness to sentences within the applicable Guidelines range, the district court "does not enjoy the benefit of a legal

1  presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. 338, 351

2  (2007). Nor is it required to use a formulaic approach yielding a mathematical justification of non-

3  Guidelines sentences. *See Gall v. United States*, 558 U.S. 38, 49 (2007). Rather, it must exercise

4  "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through

5  § 3553(a)'s list of factors." *Rita*, 551 U.S. at 358.

6      **A.    The nature and circumstances of the offense**

7      Mr. Maradiaga's conduct in the instant matter was participating with his co-defendant in the

8  sale of approximately 2 grams of fentanyl to an undercover officer.  Mr. Maradiaga did not have a

9  weapon nor did he engage in violence.  When he was approached by police officers, Mr. Maradiaga

10  was entirely respectful and he took no steps to avoid arrest.  He did not possess a scale or a larger

11  stash of drugs that might have suggested he was involved in larger-scale trafficking.

12      Mr. Maradiaga was arrested as part of the government's initiative targeting cases arising in the

13  Tenderloin for federal prosecutions.  He has no convictions on his record.  As part of this disposition

14  he will stand convicted of a felony offense. The parties' proposed felony disposition more than

15  adequately addresses the nature and circumstances of the offense.

16      **B.    Mr. Maradiaga's history and characteristics**

17      Bairon Maradiaga Archaga was born in the capital city of Tegucigalpa in Honduras and he was

18  raised in a town on the city's outskirts.  His father was only present sporadically during his

19  childhood; Mr. Maradiaga was raised by his mother.  He had three half-siblings.  The children and

20  their mother lived in a small two-room home with no electricity.  Mr. Maradiaga stopped going to

21  school at age 11 and immediately started performing work in the fields farming corn, beans, and

22  other vegetables.  He barely earned enough to scrape by on land owned by other people.

23  Approximately two years ago, Mr. Maradiaga decided to travel to the United States.  He lived first in

24  the Reno, Nevada area, then moved to the Bay Area as he sought better employment opportunities.

25  He worked as a laborer seeking paying employment anywhere he could, including Home Depot

26  parking lots.

27      Mr. Maradiaga has a 7-year-old daughter in Honduras named Brittney.  He is anxious to return

28  home to help care for her.  He is also looking forward to seeing his mother, with whom he plans to

stay initially.  His grandmother recently passed away and her death reminded him of how important it is to spend as much time as possible with family members before it is too late.  He wants to enjoy spending time with his mother and daughter at home in Honduras and he has no interest in returning here.

### C.    A sentence of time served provides specific deterrence and protects the public from future crimes

The negotiated disposition in this case is by no means lenient.  Mr. Maradiaga has no convictions and he has never before been sentenced to jail.  He has already spent more time in custody than individuals with his background who are charged with the same offense in state court. Further, as part of this plea Mr. Maradiaga is agreeing to be deported following service of his sentence.  Almost every avenue for relief that Mr. Maradiaga otherwise would be able to pursue as a potential defense in immigration proceedings will no longer be available to him. Most severely, he will be rendered permanently inadmissible to the U.S., meaning that he will be barred from re-entry for the rest of his life. Finally, before deportation, he will spend an uncertain period of time in immigration detention which would serve as an additional custodial consequence and deterrence. The recommended disposition of this matter both protects the community from crime and provides specific and general deterrence.

### CONCLUSION

For the aforementioned reasons, Mr. Maradiaga respectfully requests the Court sentence him to the parties' joint recommendation of time served and one business day and three years of supervised release with the proposed special conditions.

DEFENDANT'S SENTENCING MEMORANDUM

1

2   Dated:   October 28, 2025                    Respectfully submitted,

3
                                                JODI LINKER
4                                               Federal Public Defender
                                                Northern District of California
5
                                                         /S
6                                               _____
                                                NED SMOCK
7                                               Assistant Federal Public Defender

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S SENTENCING MEMORANDUM

6